CARMEN VALENTÍN DE MANZANO, Petitioner, *v.* DISTRICT COURT OF MAYAGÜEZ, Respondent.

No. 1263.   Argued December 8, 1941.—Decided February 10, 1942.

*V. Palés Matos* and *Pascasio Fajardo Martínez* for petitioner.  *José Sabater* for intervener, daughter of the deceased.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a certiorari proceeding instituted by Carmen Valentín de Manzano for the sending up of the record of case No. 2933 of the District Court of Mayagüez regarding the judicial administration of the estate of Luis B. Manzano in order to review and set aside, if proper, the order made therein on the 4th of November last which reads as follows:

"On reading the motion of Josefa Manzano de Fernández, daughter of the deceased, for an order directing his widow Carmen Valentín either to pay the rent on the house occupied by her, and which is under judicial administration within this proceeding, or to vacate the same, said motion is sustained on the ground that said house is under judicial administration and it is the duty of the administrator to see to it that every piece of property belonging to the estate under judicial administration should produce rents and income for the benefit of the parties interested in said estate, and none of said parties should use or utilize such property under judicial administration without paying compensation therefor, and without any order or direction of this court; and consequently, it is hereby ordered that Carmen Valentín pay every month to Francisco Pose, as judicial administrator appointed in the present case, the sum of $28, and, should she decide not to pay such monthly rent, she shall be allowed the whole of this month of November to vacate said house, subject to punishment as for contempt of court in case of disobedience. As to the arrears of rent which said Carmen Valentín is alleged to owe for the months of July, August, and September, 1941, the judicial administrator is directed to charge the same to her account."

There are three grounds alleged by the petitioner for the annulment of the foregoing order, to wit:

"(a) Since there is a judicial administrator appointed in the case under review, it was incumbent on him, and not on any other supposedly interested party, to file the motion to compel the widow to pay rent for the house she was occupying, as such officer is the representative of the estate. The lower court overlooked this part of the opposition, thus infringing the legal principle controlling property under judicial administration and the powers of the judicial

administrator, as well as the procedure, because it acknowledged capacity for filing said motion to a person who under the law had none.

"(b) . . . The Unlawful Detainer Act was completely disregarded as the result of a simple motion. A contract of lease was created where there was none before. The vacation of the house occupied by the petitioner was ordered in an unusual way, in conflict with the spirit and letter of the law regulating dispossession proceedings. . . .

"(c) Moreover, the lower court had before it for determination questions both of law and of fact. The petitioner maintains that she owns the house involved, and two others, by virtue of a donation made in her favor by decedent Luis B. Manzano by a public deed, and on the other hand, said Josefa Manzano maintains that such donation is void, and has filed an action in the lower court to annul the same. The donee moved to strike out said houses from the inventory of the properties included in the estate of Luis B. Manzano, but the lower court denied the motion on the ground that it could not summarily pass upon the validity or invalidity of the donation on a mere motion, and that they should be left on the inventory until judgment was rendered in the litigation, it being stated in said order that the rights of the parties would not thereby be prejudged. Such being the facts, we fail to see how the court below could have assumed such conflicting viewpoints, for both cases are very similar. The lower court refused to consider as valid the deed of donation for the purpose of excluding the houses from the inventory, and ruled that the parties should have their rights determined in the proper plenary suit, and by the subsequent order transcribed by us, it assumes a contrary stand and orders the petitioner to pay rent and to vacate the house donated to her notwithstanding the deed of donation evidencing the ownership of said house by said Carmen Valentín."

Josefa Manzano de Fernández appeared in the certiorari proceeding through her attorney and alleged that she is an acknowledged natural daughter under the will and testament of Luis B. Manzano, and opposed the setting aside of the order of November 4 last. The respondent judge confined himself to the sending up of the record of the judicial administration proceeding.

As appears from said record, the judicial administration proceeding was instituted by Carmen Valentín de Manzano, petitioner in the certiorari proceeding, on November 8, 1940. On December 2, 1940, the widow filed a motion setting forth that Josefa Arroyo had stated to her that she was an acknowledged natural daughter of the deceased and, therefore, that she was entitled to the service of notice.

On December 31, 1940, Josefa Manzano y Arroyo, the daughter in question, appeared through her attorney, and admitted that Carmen Valentín was the widow of Luis B. Manzano and that the latter had died on October 20, 1940, in Mayagüez, his last place of residence, leaving property, but denied the validity of her father's marriage to the mover, which was celebrated on June 12, 1939; and that of the open will claimed to have been executed by her father on August 24, 1940. She further alleged that in an open will executed on August 18, 1922, her father Luis B. Manzano acknowledged her as his daughter and appointed her as his sole and universal heir, and that she had brought in the same district court an action against the mover to annul the donation *mortis causa,* in which she specifically sought to set aside the donation of three houses executed by her ancestor to Carmen Valentín by a deed dated June 12, 1939. She concluded by praying for the appointment of an administrator to take charge of the estate.

After several incidents, which it is unnecessary to relate, Francisco Pose was appointed, on July 16, 1941, judicial administrator of the estate and on July 24, 1941, he submitted the inventory of the property of said estate including therein the three houses donated by Manzano to Carmen Valentín, one of which was occupied by Carmen Valentín, widow of the deceased.

On August 13, 1941, the district court, in passing upon petitions for temporary allowance for the support of the wife and of the daughter, directed the judicial administrator

to allow $75 monthly to the widow and $50 to the daughter, and eight days afterwards it overruled the objection of the petitioning widow to the inclusion in the inventory of the houses donated to her by Manzano prior to her becoming his wife. The grounds on which such action was based appear from the order of the court as follows:

"The court has carefully considered the deed of donation submitted in evidence by the widow in order to determine whether such property may actually be excluded from the inventory prepared by the administrator, or whether, on the contrary, such property must remain subject to the administration.

"The third and fourth paragraphs of the deed of donation, which is numbered 16 and dated June 12, 1939, read as follows:

" 'Third: That although the donor is in good health, on account of some ailment in his bladder, he most probably may have to undergo an operation which, although not dangerous, might turn out to be fatal.

" 'Fourth: That on that account, and in view of what has been stated regarding the behavior of said Carmen Valentín towards the donor, and in order to reward her, the donor Luis Manzano Soto, freely and spontaneously donates to said Carmen Valentín the three properties described in the present instrument, such donation to become effective upon the death of the donor, and consequently, the donor reserves to himself the full ownership and usufruct of the said properties for life, said full ownership and usufruct to pass to said Carmen Valentín upon his death.'

"From a mere reading of the above facts, the court becomes convinced that such donation must be considered as being *mortis causa*, that is, to become effective upon the donor's death. The donor executed the same, fearing that he might not survive an operation which he was to undergo. Forestalling, undoubtedly, any unfortunate accident that might occur as the result of such operation. This being so, such donation partakes, like all *mortis causa* donations, of the nature of last will provisions, and should be governed by the rules of testamentary succession.

"It is well, moreover, to state that since the donation does not become effective until after the donor's death, its dissimilarity to the legacy, becomes, as has been lately held by several authorities, effaced; the donation and the legacy become one and the same thing. Inasmuch as in the case before us the donation has for its object

the three properties sufficiently described and identified in the aforesaid deed of donation, the court concludes that a specific legacy is involved.

"The court deems it proper to quote as applicable in the premises the following commentaries taken from the work by Don José María Manresa y Navarro, *Ley de Enjuiciamiento Civil Española*, vol. 3, p. 198, concerning property to be included in the inventory:

" 'When treating of the inventory (p. 188 of this volume) we have stated that there should be included therein any property covered by a specific legacy and such as may have been brought into the marriage by the surviving spouse, inasmuch as both must also be appraised, the former in order to ascertain whether the same exceeds the amount which the testator may dispose of freely as against his heirs; the latter in order to allot it to its owner at its appraised value.'

"Since the present case deals, as already stated, with a donation *mortis causa*, which operates as a specific legacy and must be governed by the rules of the testamentary succession, the court thinks that the property under litigation should remain in the hands of the judicial administrator to be administered by him until the time for the partition comes, which is the proper time for alloting to each of the heirs his hereditary share, once all claims or litigations in regard thereto have been disposed of."

As the administrator deducted from the allowance to the widow for maintenance, the monthly sum of $28 as rent on the house occupied by her, she complained to the court which settled said complaint as follows:

". . . the administrator is directed to pay to the widow the full sum of $75 of the allowance granted to her and refund her the $28 deducted by him, without prejudice to his collecting from her a like monthly sum as the rent on the house occupied by her by the means authorized by the law of special legal proceedings."

The petitioner insisted on her alleged right in a lengthy memorandum which ended thus:

"*Briefly*: whether the donation is one *inter vivos*, as maintained by us in our answer in the action to annul the donation brought by Josefa M. de Fernández, or whether it is a donation *mortis causa*, as alleged by Josefa M. Manzano in the present action, the fact is that so far there exists a donation of the property sought to be taken

away from the administration of Pose. Such donation is valid, as its nullity has not been decreed by any court. It must produce its legal effect, to wit: the conveyance to the donee of the property donated; the ownership in the donee of such property implies the administration thereof, as there can be no ownership of property without the power to administer the same. If the donation is a specific legacy, application must be made, as already stated by us, of Sections 804 and 805 of the Civil Code, 1930 ed. From whatever aspect the matter is viewed, Carmen Valentín came into actual possession of her property upon Manzano's death, and there is no power, or law, or precept that would take away from her the administration of her exclusive property. To do so would amount to an unlawful deprivation of her property.''

Finally the court decided as follows:

''Whether a donation *inter vivos* or one *mortis causa* constituting a legacy in favor of the donee, might be involved,...the court is of the opinion that the claim of the widow must be settled in the action for the annulment of the donation, and that the order of the acting judge of this court, directing that the three properties, the object of the donation, should remain in the possession of the judicial administrator until a decision is reached as to the validity or nullity of said donation or legacy, must be upheld, and this shall not be understood in any way as prejudging the aforesaid pending suit to annul the donation.''

It was at this stage that the daughter filed the motion which gave rise to the order of November 4, 1941, sought to be annulled herein.

■■ We have been compelled to delve somewhat into the underlying facts in the case in order to determine in accordance with the facts and the law the only issue which, in our judgment, should be settled within this certiorari proceeding. It is unnecessary to determine whether or not the houses donated in the way already stated could be included in the inventory as hereditary property. We will grant that they were so, but we can not admit that all of them are in the possession of the administrator. Two of them apparently are and no controversy has arisen regarding the collection of the rent thereon. But one of them is not in his possession,

the one occupied by the petitioner, who not only has been in occupation thereof but has refused to vacate the premises or to pay rent thereon, on the ground that the house does not belong to the estate but to her. Such being the actual situation, was it within the power of the trial court to make the order directing the widow to pay the rent fixed by the administrator without her consent, and, in default of such payment, to allow her about a month to vacate the house, subject to punishment as for contempt in case of disobedience? The answer must be in the negative.

It is true that it is the duty of the administrator to inventory and take possession of all assets of the estate. However, where there arises, as in the present case, a controversy regarding the ownership and possession of some piece of property which the administrator considers as belonging to the estate, then in order to bring such piece of property into the estate, resort must be had to ordinary proceedings according to law, and not to drastic methods that can not be availed of within an administration proceeding.

The trial court itself acknowledged the existence of the action brought by the daughter against the widow to annul the title which the widow claimed to have over the houses donated to her by plaintiff's father, and for that reason the court refused to determine, within the administration proceeding, the issue raised by the widow when she moved that the property donated be excluded from the inventory, and the method then applied should have been followed afterwards.

Its drastic order to pay or vacate, coupled with the threat of contempt, was not proper. The *status quo* should be preserved, which is the fair and legal thing to do.

Therefore the nullity sought should be decreed and the record sent back to the district court for further proceedings not inconsistent with this opinion.

Mr. Justice Snyder took no part in the decision of this case.